**Clifford S. Davidson, OSB No. 125378**
cdavidson@sussmanshank.com
**Susan S. Ford, OSB No. 842203**
sford@sussmanshank.com
**Thomas W. Stilley, OSB No. 883167**
tstilley@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
Attorneys for Plaintiff DePaul Industries

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **DEPAUL INDUSTRIES**, an Oregon non-profit corporation,<br><br>       Plaintiff,<br>  v.<br><br>**CITY OF EUGENE**, a municipal corporation, **JOHN RUIZ**, in his official capacity as the City Manager of the City of Eugene; **BENJAMIN MILLER**, personally and in his official capacity as Assistant City Attorney for the City of Eugene; **LAVENA NOHRENBERG**, in her official capacity as Customer Experience Manager of the City of Eugene Public Library; **CLAYTON STILWELL**, in his official capacity as Purchasing Analyst for the Finance Department of the City of Eugene; and **DOES 1-9**, unknown individuals acting under color of law,<br><br>       Defendants. | Case No. 6:18-cv-320-MC<br><br>PLAINTIFF'S MOTION FOR *IN CAMERA* REVIEW OF CERTAIN DOCUMENTS REDACTED OR WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE OR WORK PRODUCT PROTECTION |

## L.R. 7-1 CERTIFICATION

Undersigned counsel for plaintiff DePaul Industries ("DePaul") certifies that the parties made a good-faith effort to resolve the dispute that is the subject of this motion and have been unable to do so.

## MOTION

Pursuant to Fed. R. Civ. P. 37, L.R. 37, and L.R. 26-3, DePaul moves the Court for an order requiring Defendants to submit to the Court for *in camera* review of e-mails and documents from May 2016 through August 2016 that were withheld or redacted on the basis of attorney-client privilege or the work product doctrine. The motion is based on the following memorandum, the Declaration of Clifford S. Davidson and exhibits thereto, and the Court's file.

## MEMORANDUM

## BACKGROUND

DePaul is an Oregon non-profit benefit corporation that exists for the purpose of providing employment opportunities to disabled individuals and is a Qualified Rehabilitation Facility ("QRF") within the meaning of ORS 279.835-279.855. Under Oregon law, the City is obligated to contract with QRF services when available.[1] Prior to 2016, DePaul had provided the City with unarmed security services at the downtown Eugene Library (the "Library") and 11 downtown parking garages under the QRF program. The City renewed DePaul's contract for unarmed security services eleven times prior to 2016. In 2016, DePaul was the only provider of unarmed security services available in Eugene. (Ex. 1.)

On May 27, 2016, the City issued Request for Proposal ("RFP") No. 2016200085, which solicited bids for armed security services for the Hult Center for the Performing Arts ("Hult Center") and the Library (the "Library"). (Ex. 2 at 2, 13-14.) The RFP's scope did not include any parking facilities outside of the Hult Center and Library. (*Id.*) The deadline to respond to the RFP was June 14, 2016. DePaul did not bid on the RFP calling for armed guards because it was

---

[1] The only exceptions to this requirement are listed in ORS 279.850(1)(b), but the Defendants have not asserted any of the exceptions apply.

Page 2 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

not qualified to provide armed services. After the bidding period closed, the City awarded the bid to ASI, a non-QRF security service provider. (Ex. 3.) At some point before the execution of the resultant contract with ASI, without explanation, the City devised a plan to deprive DePaul of all of the downtown parking garages at which it provided unarmed security services, with the exception of the Municipal Court, for which DePaul provided services under a separate contract.

On February 8, 2017, DePaul filed its Complaint against the City, alleging violations of the QRF statute and breach of contract. On April 27, 2017, DePaul served its First Request for Production on the City. (Ex. 4.) Between June and August 2017, the City produced approximately 5,273 pages of documents in response to DePaul's Request for Production. The discovery received to date supports that the City made a retaliatory decision to graft DePaul's parking garages into the scope of the Hult Center and Library contract. As late as May 17, 2016, 10 days before the RFP was published, Travis Hargitt, the Parking Operations Supervisor, asked DePaul to provide a 2016-2017 proposed budget for security services. (Ex. 5.) Yet, less than one month later, and one week after the deadline to respond to the RFP, Mr. Hargitt asked another City official to be part of the scoring for the RFP because he was "told by [the] CAO [City Attorney's Office] that I can't go with DePaul anymore." (Ex. 6.) Further, a July 21, 2016 internal memo by Tim Westerman, a Financial Management Analyst with the City, stated that:

> "[w]ith very short notice Parking Services was directed by the City Attorney's Office to cease using DePaul security at the end of August. Purchasing made us aware that we could join an RFP award in progress . . .We were not included in the selection process for that RFP and as such were pointed to negotiate with ASI for security services after the termination of the DePaul contract."

(Ex. 7.)

Based on information received during discovery, DePaul filed on December 18, 2017 its First Amended Complaint ("FAC") alleging violations of 42 USC § 1983, the QRF statute, City of Eugene Human Rights Code, public contracting laws, breach of contract, fraud, and

negligence.[2] As the Court knows, DePaul alleges that the City's decision to non-renew DePaul's contract was constitutionally impermissible for several reasons, including its retaliatory nature and lack of rational justification.

How and why (and whether) the City devised a scheme to deprive DePaul of the parking garage contract are central to the constitutional and contract claims in this case. Mr. Cosby filed suit against the City on February 15, 2016. On March 3, 2016, Ben Miller, a City attorney, sent a tender letter to DePaul. (Ex. 8.) On May 31, 2016, DePaul denied Mr. Miller's tender letter. (Ex. 9.) Sometime between May 17, 2016 (when Mr. Hargitt requested a 2016-2017 budget from DePaul) and June 21, 2016, the City decided to graft the parking garage contract held by DePaul into the Hult Center and Library contract. Thus, the communications among City officials, including the City Attorney's Office, from May 2016 through August 2016, when ASI took over security services in the parking garages previously serviced by DePaul are of critical importance. The Defendants agree that the "claims and defenses in this case relate to the limited renewal of a contract in the late May 2016 to August 2016." (Ex. 10 at 3, 6, 7, 14, and 15.)

Despite the fact that the parties agree that the May through August 2016 timeline is essential to this case, Defendants have either heavily redacted emails ("Mystery Emails") within that timeframe or refused to provide documents in their entirety. (*See* Exs. 11 and 12.) In particular, Defendants have failed to produce unredacted documents in response to Request Nos. 6, 7, 11, and 22. The City has not provided DePaul with further details regarding the redacted or withheld documents.

## ARGUMENT

A. **The City's Communications Between May 2016 and August 2016 Do Not Qualify for Attorney-Client Protection**

The attorney-client privilege attaches to confidential communications between an attorney and client for the purposes of securing legal advice or assistance. *United States v.*

---

[2] DePaul abandoned its theory of liability under the City of Eugene Human Rights Code on June 29, 2018.

Page 4 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

*Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* "[T]he privilege stands in derogation of the public's 'right to every man's evidence' and as 'an obstacle to the investigation of the truth,' [and] thus, . . . '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Id.* (quoting *In re Horowitz*, 482 F.2d 72, 81 (2nd Cir. 1973) (citations omitted)).

A company can shelter a lawyer's advice only upon a clear showing that the lawyer gave it in a professional legal capacity. *Wit v. United Behavioral* Health, No. 14-cv-02346-JCS, 2016 U.S. Dist. LEXIS 7242, at *11-12 (N.D. Cal. Jan. 21, 2016). The attorney-client privilege does not extend to non-legal or business advice because no confidential relationship attaches to the communication *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980) (no privilege when a lawyer is acting as a business agent); *Fine v. Facet Aerospace Prods. Co.,* 133 F.R.D. 439, 444 (S.D.N.Y. 1990) (no privilege for in-house counsel communications when made for general business purposes and contained no legal advice). The attorney-client privilege standard is no different for a city attorney. *See Smith v. Coulombe*, No. 2:11-cv-531-SU, 2013 U.S. Dist. LEXIS 14783 (D. Or. Feb. 4, 2013) (holding that because the attorney-client privilege impedes "full and free" disclosure of the truth, a city attorney's attorney-client privilege must be strictly construed).

In the present case, documents produced to date suggest that the edict to deprive DePaul of the parking garage contract came from the City Attorney's Office. (Exs. 6, 7.) However, Defendants have asserted the attorney-client privilege on all communications exchanged directly from (or to) the City Attorney's Office. If the decision to graft the DePaul parking garage contract into ASI's contract was merely a business decision, then the City's claim that the City Attorney's Office did not offer any non-legal business and/or contract advice to City officials is suspect. DePaul is entitled to view non-legal-advice communications among City officials, including the City Attorney's Office, because these communications are not covered by the attorney-client privilege.

Page 5 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

The Defendant also produced the heavily redacted Mystery Emails among City officials that, as far as is apparent from the unredacted portions, did not include the City Attorney's Office in the e-mail thread. (Ex. 11.) Almost all of the Mystery Emails among the City officials range in date from June 20, 2016 through June 23, 2016. Only four of the Mystery Emails post-date DePaul's filing of this action. Between June 20, 2016 and June 23, 2016, Mr. Hargitt, the City's Parking Operations Supervisor; Clayton Stilwell, a Purchasing Analyst; and Mr. Westerman, a Financial Management Analyst, discuss how to "move away from the DePaul contract." (Ex. 11.) However, large portions of their exchanges are redacted. For example, on June 21, 2016, Mr. Stilwell advises Mr. Hargitt that "it will be very important that you have all the performance-issue related documentation as you move away from the DePaul contract. Keep it handy and keep adding to it as the need arises." (Ex. 11 at 5.) Mr. Hargitt responded with, "[g]uess I better start documenting big time. I was told that this was/would be directed towards me and not a choice on my part??". (*Id.*) Mr. Stilwell's response to Mr. Hargitt's question is redacted in its entirety. Reading between the lines, DePaul believes Mr. Stilwell's response may substantiate DePaul's allegations regarding the City's decision to "move away from DePaul," and how it planned to accomplish this despite the QRF requirements. The Mystery Emails dated between June 20, 2016 and June 23, 2016 do not suggest that the City officials are discussing attorney-client privileged information and do not include the City Attorney's Office in the email thread. They therefore do not appear to be protected by the attorney-client privilege.

The party asserting the attorney-client privilege has burden of establishing privilege. *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977). The court has discretion over whether to conduct an *in camera* review and should consider the amount of material it is asked to review, the relevance of the alleged privileged material to the case, and the likelihood that an *in camera* review will reveal evidence to establish the absence of a privilege. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1072-1073 (9th Cir. 1992). Here, Defendants have refused to provide an adequate privilege log to demonstrate that the assertion of attorney-client privilege is appropriate, and the number of documents in dispute is likely fewer than 50 pages. Further, given

Page 6 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

the complete lack of documents produced directly to or from the City Attorney's Office, it is likely that at least some of these communications do not qualify as attorney-client privileged. As such, an *in camera* review is appropriate to determine whether the documents are in fact privileged. *See In re Grand Jury Proceeding,* 721 F.2d 1221, 1223 (9th Cir. 1983) (disputed materials may be submitted to the court for *in camera* review so that the court can determine whether privilege applies).

B.  **The City Has Failed to Meet Its Burden to Establish that Documents are Protected by the Work Product Doctrine**

In order for the work product doctrine to apply, a document must be prepared in anticipation of litigation. Documents that are prepared in the regular course of business are not work product. *Interstate Prod. Credit Ass'n v. Fireman's Fund Ins. Co.*, 128 F.R.D. 273, 279 (D. Or. 1989). Furthermore, even documents prepared in anticipation of litigation are discoverable upon the requisite showing of substantial need for the materials and the inability to obtain their equivalent by other means. *See* Fed. R. Civ. P. 26(b)(3). The party asserting work product protection has the burden of showing that the protection applies. *Interstate Prod. Credit Ass'n*, 128 F.R.D. at 279. The submission of documents for an *in camera* inspection is a "practice both long-standing and routine in cases involving claims of privilege." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002,* 318 F.3d 379, 386-387 (2nd Cir. 2002).

Defendants have produced a privilege log. A privilege log containing the following is sufficient to raise a *prima facie* assertion of privilege or work product: (a) the attorney and client involved; (b) the nature of the document; (c) all persons shown on the document to have received or sent it; (d) all persons known to have been furnished the document or informed of its substance; and (e) the date the document was generated, prepared, or dated. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071. Here, Defendants fall short of meeting their burden. Defendants assert work product protection with regard to an undated document titled "Notes.docx" prepared by Clayton Stilwell (a Purchasing Analyst) and sent to City attorney Hwa

Page 7 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Go and City employee Travis Hargitt ("Stilwell Notes"). (Ex. 12 at 1.) The Stilwell Notes fail to identify a date or describe the nature of the document. Without more information, it is simply impossible to for DePaul to determine if: (1) the assertion of the work product claim is valid; or (2) if valid, whether a hardship exemption under Fed. R. Civ. P. 26(b) applies. As such, an *in camera* review is appropriate to resolve the privilege dispute.

C. **Assuming the Attorney-Client Privilege and Work Product Protections Apply, the Fraud Exception Supplants Them**

The attorney-client privilege and work product exceptions do not apply to communications intended to further fraud. *Clark v. United States*, 289 U.S. 1, 15-16 (1933); *United States v. Doe (In re Grand Jury Investigation)*, 810 F.3d 1110, 1113 (9th Cir 2016). A client "who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark*, 289 US at 15. Under the fraud exception, it does not matter if the attorney was ignorant of the client's intent. *United States v. Chen*, 99 F.3d 1495, 1504 (9th Cir. 1996). Conversely, an attorney's fraudulent wrongdoing cannot be shielded by the attorney-client privilege. *In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213 (3rd Cir. 1989). In short, the attorney-client privilege cannot be used as a shield by either the client or the attorney to pursue or cover up fraudulent activity.

The test for invoking the fraud exception to the attorney-client privilege is whether there is a factual basis adequate to support a good faith belief by a reasonable person that an *in camera* review of the materials may reveal evidence to establish the claim that the fraud exception applies. *United States v. Zolin*, 491 U.S. 554, 572 (1989); *Chen*, 99 F.3d at 1503. A party need make only "a minimal showing that the crime-fraud exception could apply." *United States v. Christensen*, 828 F.3d 763, 800 (9th Cir. 2016) (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071). The threshold is meant only to prevent "groundless fishing expeditions" because an *in camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure. *Id.* at 800-801 (quoting *In re Grand Jury Investigation*, 974 F.2d at 1073).

Page 8 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

"Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Zolin*, 491 U.S. at 572; *UMG Recording,* 479 F.3d at 1092. If the court conducts an *in camera* review, it must determine if the materials are in fact privileged and, if so, whether the party seeking to apply the fraud exception made a prima facie showing that the fraud exception applies. *Zolin*, 491 U.S. at 572. The purpose of the fraud exception is to protect against the abuse of the attorney-client relationship. *Clark*, 289 U.S. at 15; s*ee also Hutchinson v. Farm Family Cos., Ins. Co.,* 867 A.2d 1, 6-7 (Conn. 2005) (attorney-client privilege does not attach where communications are made for the purpose of evading a legal or contractual obligation); *Nix v. Whiteside*, 475 U.S. 157, 174 (1986) (attorney-client confidentiality does not include communications related to plans to engage in future criminal conduct); *United States v. Alexander*, 287 F.3d 811, 816-817 (9th Cir. 2002) (privilege does not attach to client's threats against attorney and others); and *Craig v. A.H. Robins Co.,* 790 F.2d 1, 304 (1st Cir. 1986) (continuing fraudulent misrepresentation and cover-up vitiates not only an attorney-client privilege but also any work product immunity).

In the present case, DePaul alleged fraud against the City based on the fact that the RFP did not mention facilities other than the Hult Center and Library, which would require "armed" security services. The City's intention was to deprive DePaul of the parking garage contract by awarding a contract to a public bidder and then expand the scope of the work to be performed to include unarmed security services for the Library and the City's downtown parking garages. DePaul's allegations are evidenced by: (1) correspondence between City officials on how to add the parking garage contract into the already expired RFP (Exs. 6, 7, 11); (2) the temporal proximity between DePaul's denial of the Cosby lawsuit tender as outlined above; and (3) the continued lack of armed guards in Library and parking garages. (FAC at ¶ 109.) The City's misrepresentations regarding the scope of the contract created an opaque bidding process that prevented DePaul from exercising its right to bid, protest, or enjoin the RFP process. As such, Defendants are not entitled to either the attorney-client privilege or work product doctrine to hide documents that evidence the furtherance of their fraudulent scheme to deprive DePaul of the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

parking garage contract and an *in camera* inspection is appropriate to determine if the crime or fraud exception applies.

## CONCLUSION

For the foregoing reasons, the Court should order Defendants to submit to the Court for *in camera* inspection e-mails and documents from May 2016 through August 2016 that were withheld on attorney-client privilege and/or work product grounds in response to Plaintiff's First Request for Production.

SUSSMAN SHANK LLP

By  s/Clifford S. Davidson
    Susan S. Ford, OSB No. 842203
    Thomas W. Stilley, OSB No. 883167
    Clifford S. Davidson, OSB No. 125378

    Attorneys for Plaintiff DePaul Industries

Page 10 – PLAINTIFF'S MOTION FOR AN *IN CAMERA* INSPECTION

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130