IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEPAUL INDUSTRIES, an Oregon
non-profit corporation,

        Plaintiff,

        v.

CITY OF EUGENE, at al,

        Defendants.

Case. No. 6:18-cv-0320-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff DePaul Industries is an Oregon non-profit corporation and a "Qualified Non-Profit Agency for Individuals with disabilities" ("QRF") as defined under Oregon statute ORS 279.835(5). Local governments and agencies are mandated to contract with QRFs that provide certain available services before considering a for-profit entity.

    DePaul Industries is the only QRF listed in Lane County to provide <u>unarmed</u> security services. The City of Eugene had two contracts with DePaul Industries for unarmed security services that had renewed annually over a twelve year period. The contracts were not renewed in May of 2016.

    Plaintiff alleges that Defendants created a pretext of wanting armed security services so that the City could cancel the contracts with DePaul Industries in order to retaliate and punish DePaul Industries for the conduct of one of its employees. This employee, in his capacity as a private citizen, was a vocal critic of the City Council. As alleged, had the City placed a bid for

1 – OPINION AND ORDER

unarmed security services, then the City would have been obligated by law to award the bid to DePaul Industries. As a result of the City's deceptive conduct, DePaul Industries lost their contracts. The complaint alleges eight claims:

(1) Violation of Oregon's QRF statute, ORS 279.850 – against the City;
(2) Violation of Oregon's Public Contracting Code, ORS 279A – against the City;
(3) Violation of Substantive Due Process – against all defendants;
(4) Violation of Procedural Due Process – against all defendants;
(5) First Amendment Retaliation – against all defendants;
(6) In the alternative, breach of contract – covenant of good faith and fair dealing – against the City;
(7) Fraud – against the City; and
(8) Negligence – against the City.

Defendants move to dismiss the complaint for failure to state claims upon which relief can be granted. Defendants' position is that (1) the City lawfully followed public contracting procedures and (2) there were no QRFs in Lane County for <u>armed</u> security services.

The overriding issue in this case is whether, as alleged, Defendants acted under a scheme of deception or fraud. The legal arguments in Defendants' motion to dismiss assume implicitly that the Defendants were acting in good faith. At this stage however, in accepting the allegations of material fact as true and construing them in the light most favorable to the non-movant, Plaintiffs have stated claims upon which relief can be granted (with one exception).

Defendants' motion to dismiss (ECF No. 9) is DENIED in part. Plaintiff's negligence claim against the City is dismissed with leave to amend.

## FACTUAL BACKGROUND

### A. Two renewable contracts

This case involves two separate and renewable contracts between DePaul Industries and the City of Eugene. Under the first contract (the parking contract), DePaul Industries provided unarmed security services at eleven City-owned parking garages. Under the second contract (the

library contract), DePaul Industries provided unarmed security services at the Downtown Eugene public library. Am. Compl. Exs. 1 & 2. Each 12-month contract had historically been renewed.

The parking contract covered eleven City parking garages to include the garages at the Library and the Hult Center for the Performing Arts. A different contractor provided security services at the Hult Center itself. Am. Compl. Ex. 1 at 12, 41. The agreement and extensions on the parking contract started on July 1 and ended on June 30 of each year. *Id*. at 19-21; Stilwell Decl. ¶ 9, Ex. 4. The library contract ran from November 30 to November 29 for some years, but most recently ran from July 1 to June 30. Am. Compl. Ex. 2, 49, 51, 59; Stilwell Decl. ¶ 9, Ex. 6.

### B. City seeks new security vendor

In 2016, the City used the competitive bidding process purporting to seek a vendor that could provide both armed and unarmed security services at certain facilities. Stilwell Decl. ¶ 3, Ex. 1 at 12, 14. On May 27, 2016 the City published a RFP through its "ebid" system. Stilwell Decl. ¶ 4, Ex. 2. The RFP explicitly covered: (1) the Hult Center, (2) the Library, and (3) the parking facilities for those two locations, as well as "other facilities as may be covered by a resulting contract." Stilwell Decl. ¶ 3, Ex. 1 at 2, 12, 14. There was no indication in the RFP that the "other facilities" were the remaining parking facilities that were covered by DePaul Industries parking contract.

DePaul Industries was not in a position to bid on the RFP because it did not provide armed security services. DePaul Industries' contracts were set to expire on June 30, 2016. The Library contract was extended for one month to July 31, 2016 and the parking contract was extended for two months to August 31, 2016. Stilwell Decl. ¶ 9, Ex. 4 at 1, Ex. 6 at 15.

On June 1, 2016, a City employee e-mailed DePaul Industries' security supervisor directly in response to DePaul Industries' request for "the open RFP for security services."

Pallanch Decl. ¶ 3, Ex. 2. DePaul Industries' President and CEO, Travis Pearson, received the RFP information "soon after." Pallanch Decl. ¶ 4, Ex. 3. DePaul Industries did not attend the mandatory pre-closing meeting on June 2, 2016, and did not submit a proposal. Silwell Decl. ¶¶ 3, 6-7, Ex. 1 at 2; Pallanch Decl. ¶ 4, Ex. 3. DePaul Industries did not submit a protest to the RFP, although the RFP provided a procedure for protesting the "[p]rocurement process or the Solicitation Document" and notified RFP recipients that protest exhaustion is required prior to seeking judicial review. Stilwell Decl. ¶¶ 3, 6, Ex. 1 at 3-4.

On August 1, 2016, the RFP was awarded to Advanced Security Inc., which provides both armed and unarmed security services. Stilwell Decl. ¶ 8, Ex. 3 at 12-14. The contract was later amended to include the remaining eight parking lots covered in DePaul Industries' parking contract, in addition to the Library, the Hult Center, and their respective parking lots. Stilwell Decl. ¶ 8, Ex. 3 at 19. DePaul Industries' final parking contract extension expired on August 31, 2016. Stilwell Decl. ¶ 9, Ex. 4 at 1.

### C. Mark Cosby

Separate from the City's contracting process, the City of Eugene found itself defending a civil suit (now resolved) brought by Mark Cosby, an employee of DePaul Industries. Mr. Cosby, as a private citizen, sued the City in February 2016, alleging that the City retaliated against him for exercising his First Amendment rights. Am. Compl. ¶ 13. Mr. Cosby spoke critically of Eugene's mayor at multiple City Council meetings, attended protests, and reached out to a criminal defense attorney in a case the City was investigating. Am. Compl. ¶¶ 30-32. The City attempted to tender defense of the Cosby suit to DePaul Industries in May 2017, before issuing the RFP. The City relied on the indemnification provision in the parking contract. *Id*. ¶ 34, Ex. 1

at 4. DePaul Industries and its insurer denied the tender as Mr. Cosby's complaints against the City were not related to his employment. *Id*. ¶¶ 34-35.

## PROCEDURAL HISTORY

This action originated as an adversary proceeding in the Bankruptcy Court for the District of Oregon, Portland Division filed against the City in February 2017. DePaul Industries was the debtor in a now-closed bankruptcy case. Case No. 16-32293-pcm11, ECF No. 362 (final bankruptcy decree); Adv. Pro. No. 17-03021-pcm (adversary proceeding). The original complaint alleged two claims against the City. Adv. Pro. No. 17-03021-pcm, ECF No. 1. The parties exchanged initial disclosures and written discovery in 2017 based on the original complaint. Pallanch Decl. ¶ 5.

In October 2017, DePaul Industries sought leave to file an amended complaint, which the City opposed on grounds that the new claims were futile. *Id*., ECF Nos. 30, 34. The First Amended Complaint, which provides the operative pleading in this case, was filed on December 18, 2017. *Id*., ECF No. 57. After the filing of the amended complaint, the District Court withdrew its reference of the adversary proceeding to the Bankruptcy Court, and this case was subsequently transferred to the Eugene Division on February 20, 2018.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant, *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. Oregon's statutory requirements (First and Second Claims for Relief)

#### A. ORS 279.850 - Oregon's QRF statute

Oregon law requires all state and local governments to purchase goods and services from QRFs (Qualified Non-Profit Agency for individuals with disabilities) when the product or service is listed on a QRF Procurement List and meets the government agency's procurement requirements. *See* ORS 279.835-279.855; 279.850(1)(a)[1]

DePaul Industries alleges the City wanted to end their contractual relationship with DePaul Industries, but could not do so without running afoul of Oregon's QRF statute as DePaul Industries is the only QRF listed for Lane County to provide "unarmed security guard services." Davidson Decl., Ex. 3; ECF No. 16. Therefore, the City allegedly created a pretext of wanting armed security guards and placed all security services under one common provider as a sham in order to disqualify DePaul Industries from the bidding process. DePaul Industries alleges the

---

[1] "[A] public agency that intends to procure a product or service on the procurement list that the Oregon Department of Administrative Services established under ORS 279.845 shall, in accordance with the Department's rules, procure the procure product or service at the price the department established from a qualified nonprofit agency for individuals with disabilities, provided that the product or service is of the appropriate specifications and is available within the period the public agency requires." ORS 279.850(1)(a).

City was motivated to retaliate against DePaul Industries, because one of their employees was a vocal critic of the mayor and the city's practices.

### B. Public Contracting Code, ORS 279A

As to their second claim, DePaul Industries alleges that the City of Eugene failed to adhere to the statutory requirements of the Public Contracting Laws. Am. Compl. ¶¶ 69, 74. *Citing* ORS 279A.015[2]; *also* City Rule 137-046-0120. DePaul Industries alleges specifically that the City violated ORS 279B.060, by failing to accurately describe the procurement. Under 279B.060, a Request for Proposal must describe the procurement, including the scope of work and include all contractual terms and conditions applicable to the procurement.

### C. Administrative exhaustion and judicial review

Defendants argue that DePaul Industries is foreclosed from judicial review on claims one and two because DePaul Industries failed to exhaust their administrative remedies. Def.'s Mot. 8-9. The City argues that the QRF statue is subject to Oregon's "Public Contracting Code"[3] which provides a mechanism for judicial review when a prospective bidder disagrees with the requirements of the solicitation documents or the bid process. A prospective bidder is allowed to timely protest a procurement if it believes the procurement process is contrary to law, unnecessarily restrictive, is legally flawed, or improperly specifies a brand name. ORS 279B.405(2); *see also* City Rule 137-047-0730.

Because the QRF statute itself does not provide for judicial remedy, instead, under ORS 279.B.420, a person may not seek judicial review unless "[t]he person gave written notice that

---

[2] ORS 279A.015: "[A] sound and responsive public contracting system should . . . [i]nstill public confidence through ethical and fair dealing, honesty and good faith on the part of government officials and those who do business with the government."
[3] Oregon's "Public Contracting Code" is found in Chapters 279A, 279B, and 279C, and applies to "all public contracting" in Oregon. ORS 279A.025.

7 – OPINION AND ORDER

described the alleged violation to the contracting agency not later than 10 days after the date on which the alleged violation occurred and, regardless of the when the alleged violation occurred, not later than 10 days after the date of execution of the contract." ORS 279B.420(3)(e). Before judicial review is available, the person must have "exhausted all administrative remedies the contracting agency provides." ORS 279B.420(3)(f).

### D. Equitable estoppel and futility

DePaul Industries argues that both equitable estoppel and the futility exception apply. With regard to estoppel, they argue that the deceptive nature of the RFP process estops the City from arguing that the plaintiff should have exhausted their remedies by filing a protest. Because the City hid the fact that the "other facilities" covered the majority of parking lots secured by DePaul Industries under their parking contract (one that was typically renewed), DePaul Industries could not be expected to reasonably understand that the RFP seeking armed security intended to cover those lots.

Equitable estoppel comes into play if a defendant takes active steps to prevent the plaintiff from timely suing. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000). "Equitable estoppel turns on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representation; (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct; and (3) the extent to which the purposes of the limitations period have been satisfied." *Singh v. United Sates*, No. 14-cv-02008-EDL, 2015 US Dist. LEXIS 6318, at *16 citing *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).

DePaul Industries next argues that because the City always intended to terminate the contract with DePaul Industries, even had DePaul Industries protested the RFP (or the final contract award), it would have been an exercise in futility. The futility exception applies when, for example, the agency has already taken a contrary position through promulgation of regulations, policies, or informal interpretive memoranda. *Albright v. Emp't Appeals Bd.*, 32 Or. App. 379, 382-83 (1978).

The overriding allegation that Defendants acted under a scheme of deception or fraud evokes the applications of equitable estoppel and the futility exception. As alleged, because of the City's deceptive conduct, DePaul Industries did not know that their contract as to the parking lots was to be cancelled. Relying on the plain language of the City's RFP seeking armed security services for the Library and Hult Center, as well as DePaul Industries' ongoing relationship and course of dealing with the City, DePaul Industries was unaware of the City's true intent at the time to end its parking contract with DePaul Industries. Second, because the City was motivated to ending its contractual relationship with DePaul Industries, any protest to the RFP's criteria or bidding process would have been futile. If, as alleged in the amended complaint, the City engaged in deception to prevent the DePaul Industries from engaging in what appeared to be a limited RFP, the doctrines of estoppel and futility would subvert their position that DePaul Industries needed to exhaust its statutory remedies.

## II. Substantive Due Process (Third Claim for Relief)

DePaul Industries alleges a protected interest in performing work under the library contract. Am. Compl. ¶¶ 79-83. The claim is based on (1) its status as a QRF; (2) the history of contract renewal; and (3) a liberty interest to "participate in the public procurement process" as prescribed by law. Am. Compl. ¶¶ 84-91.

### A. Protectable property interest

In order to succeed on a Substantive or Procedural Due Process claim, a plaintiff "must first demonstrate that he was deprived of a constitutionally protected property interest." *LKS Enters., LLC v. City of Silverton*, No. 6:16-cv-785-MC, 2017 U.S. Dist. LEXIS 31243, at *9 (D. Or. Mar. 6, 2017) (McShane, J.) (*citing Gerhart v. Lake Co., Montana*, 637 F.3d 1013, 1019 (9th Cir. 2011)). "Property," within the meaning of the Due Process Clause, "embraces a broad, although not infinite, range of interests." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571-72 (1972) (in context of renewal of allegedly implied agreement).

A property interest may be created by "existing rules or understandings that stem from an independent source such as state law." *Id*. at 577; *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988). A party has a protected property interest where an "entitlement is couched in mandatory terms." *Wedges/Ledges of California Inc. v. City of Phoenix*, 24 F.3d 56, 62-3 (9th Cir. 1994) (concluding that use of the imperative in statute created an entitlement to license tags for coin-operated games, so long as they remain games of skill). A legitimate claim of entitlement may also derive from "de facto" conditions, implied agreements, or courses of conduct. *Perry v. Sindermann*, 408 U.S. 593, 599-603 (1972) (holding that instructor was entitled to prove on remand that the policies and practices of his institution created a property interest in continued employment).

The City argues that the library contract does not constitute a protected property interest simply because it was traditionally renewed. Further, the City submits that the QRF statute does not create an entitlement to a perpetual preference for DePaul Industries' services. In response, DePaul Industries points to the case, *David Hill Dev., Ltd. Liab. Co. v. City of Forest Grove*, 688 F. Supp. 2d 1193 (D. Or. 2010) (Acosta, MJ) (discussed in *LKS Enters*). In *David Hill*, the Court

found that a real estate developer sufficiently alleged a property interest where (1) Oregon law provided that a plat was binding and (2) the City of Forest Grove undertook a pattern of interference with the plaintiff's ability to develop the property because the city preferred other developers. *Id*. at *1217-*1219. *See Grabhorn, Inc. v. Metropolitan Service Dist.*, 624 F. Supp. 2d 1280 1284, 1288 (D. Or. 2009) (King J.) (holding that metropolitan code controlling variance application was "sufficiently mandatory" to create a constitutionally protected property interest).

Here, the Amended Complaint does assert a protected property interest on a theory that the QRF statute obligates the City to contract with a QRF qualified to perform the required services. The "de facto" condition of having the Library contract renewed annually also creates a protected property interest. The ongoing, decade-long contractual relationship between the parties establishes the understanding and expectation of DePaul Industries' property interest. *See*, Davidson Decl. Exs. 20, 21. At this stage, DePaul Industries has sufficiently alleged a protected property interest in its Library contract.

### B. Rational basis for the City's actions

The second element in proving a violation of Substantive Due Process is a rational-basis review. *Matsuda v. City & Cty. Of Honolulu*, 512 F.2d 1148, 1156 (9th Cir. 2008). DePaul Industries bears the "extremely high" burden to prove that Defendants "could have had no legitimate reason for [their] decision." *Bldg. 11 Inv'rs LLC v. City of Seattle*, 912 F. Supp. 2d 972, 980-81 (W.D. Wash. 2012) (*citing Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). "To maintain a substantive due process claim, [a plaintiff] must show that the City's denial of the [claimed liberty or property right] lacked a rational relationship to a government interest." *Bldg. 11 Inv'res*, 912 F. Supp. 2d at 980.

The City argues its actions had "reasonable justification" because of its purported need for armed security guards. The City's rational basis was to seek competent armed security guards and to consolidate services to an agency that could supply armed guards. DePaul Industries was unable to do so.

The City's argument assumes, however, that the City was acting in good faith. This assumption sits contrary to the allegations that the stated need for armed security services was a pretext, and the City's true motivation was to retaliate and punish DePaul Industries for the conduct of one of its employees. Improper, retaliatory motivation cannot serve as a rational basis for the denial of a claimed property right. *See Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, No. 2:10-cv-2424-KJM-KJN, 2018 U.S. Dist. LEXIS 56115, at *43-*64 (E.D. Cal. Mar. 31, 2018) (collecting Ninth Circuit cases, including *David Hill*, demonstrating that improper motivation, standing alone, can support a Substantive Due Process claim, and holding that substantial evidence supported jury verdict in plaintiff's favor.)

### C. Qualified immunity as to individually named defendants

Defendants move to dismiss claims against individually-named Defendant Benjamin Miller and the unnamed Doe defendants on the grounds of qualified immunity. Def.'s Mot. 19. To determine whether a public official is entitled to qualified immunity when sued in their individual capacity, the Court considers whether the official violated a constitutional right and whether the right was clearly established at the time of the official's alleged misconduct. *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018). For a constitutional right to be clearly established, its "contours must be sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. at 1163 (quotations and citations omitted). "Although a case on point is not required for a right to be clearly established,

existing precedent must have placed the constitutional question beyond debate." *Id*. To evaluate whether a constitutional question is beyond debate, the Court looks for cases for controlling authority in the plaintiff's jurisdiction at the time, or a consensus of cases of persuasive authority such that a reasonable official could not have believed their actions were lawful. *Id*.

Plaintiff bears the burden of alleging facts that would establish both: (1) violation a constitutional right, and (2) that those rights were "clearly established" at the time. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011). The standard is the "objective legal reasonableness of the action," rather than subjective intent. *Crawford-El v. Britton*, 523 U.S. 574, 604 (1998).

It has been established since 2006 that the government may not take discretionary action in retaliation for First Amendment activity. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Part of the allegations is that the City and individually-named Defendants retaliated against DePaul Industries for continuing to associate with Mark Cosby. The boundaries of unconstitutional conduct the City alleged crossed are clearly established through a number of cases.[4] The allegation that Defendants acted under a scheme of deception further suggests Defendants understood their alleged conduct violated clearly established rights.

### III. Procedural Due Process (Fourth Claim for Relief)

The elements for a procedural due process claim are: (1) a constitutionally protected property or liberty interest; (2) a deprivation of that interest by the government; and (3) lack of

---

[4] *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011) (The government may not pressure one of its contractors to fire an employee because the government opposes its speech); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) (The government may be liable to a company for violating the rights of its affiliates); *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 670, 674-680 (1996) (The government may not place an unconstitutional condition on renewal of a contract—specifically, the condition of waiving one's speech rights); *Blaidsdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179-80 (2005) (The government may not retaliate against a party that refuses to retaliate against another. Punishing someone who refuses to retaliate is itself actionable retaliation).

13 – OPINION AND ORDER

process. *Shanks v. Dressel*, 540 F.3d 1082, 1090-91; *Grabhorn*, 624 F. Supp. 2d 1285. Here DePaul Industries alleges that the City deprived them of a property interest by awarding the library contract to Advanced Security, Inc. through a competitive bidding process, then amending that contract to add the parking facilities DePaul Industries was servicing. By amending the contract with Advanced Security, Inc., DePaul Industries was sidelined from utilizing a competitive bidding process, discovering too late that the phantom "other facilities" were the very parking lots that it was already servicing under a contract that had traditionally been renewed.

The factors to consider in determining whether procedural protections are adequate are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The City's motion argues that there was adequate process. An RFP was published to DePaul Industries through its ebid system, and a link to it was sent directly to a DePaul Industries employee at the employee's request. Stilwell Decl. ¶ 4, Ex. 2; Pallanch Decl. ¶ 3, Ex. 2. The RFP gave notice that armed security services at the Library, the Hult Center, and both buildings' parking facilities were open for bid. Stilwell Decl. ¶¶ 3, 5, Ex. 1 at 2, 12-13.

There is a question of fact as to whether the RFP gave appropriate notice that additional parking facilities could be added to the new contract. After awarding the library contract to an armed security services vendor, the City amended that contract to include the parking facilities for which DePaul Industries had been providing unarmed security services. Here, DePaul

Industries specifically alleges the City's use of vague language in the RFP was intended to deceive DePaul Industries by hiding the fact that the City's true purpose was to sidestep the requirements of the QRF. DePaul Industries has stated a claim for relief.

### IV. First Amendment Retaliation (Fifth Claim for Relief)

DePaul Industries alleges that the City did not renew its contract in retaliation for exercise of its First Amendment right. To state a claim for First Amendment retaliation, a plaintiff must plausibly allege that "(1) it engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its expressive conduct was a substantial or motivating factor for the adverse action." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir 2004). "Whether a public employee or contractor's expressive conduct addresses a matter of public concern is a question of law . . . made in light of the content, form, and context" of the speech. *Id*. at 924.

The City argues that the stated First Amendment retaliation claim does not satisfy the necessary elements, because the alleged retaliation was directed against DePaul Industries and not directed against the person exercising their First Amendment rights. It was employee Mark Cosby, in his personal time, who had exercised his free speech, while it was DePaul Industries who was allegedly retaliated against. The City also argues that DePaul Industries' continued employment of Mr. Cosby is an individual matter, and not a matter of public concern.

The alleged facts here do not mimic exactly facts in precedential cases. Ultimately though, crediting the allegations as true for purposes of the motion to dismiss, DePaul Industries plausibly alleged that the City conditioned renewal of DePaul Industries' contract on (1) surrender of DePaul Industries' right to associate with disabled persons fully participating in civil society by engaging their government; (2) waiver of DePaul Industries' employees'

15 – OPINION AND ORDER

freedom of expression; and (3) DePaul Industries' acceptance of tender of a civil case between Mr. Cosby and the City. Am. Compl. ¶¶ 7, 31, 103. These constitute unconstitutional conditions imposed by the City. As alleged the government violated the unconstitutional conditions doctrine by taking discretionary action against the DePaul Industries for associating with Mr. Cosby, a person who engaged in constitutionally-protected activities of which the government disapproves.

In *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245 (10th Cir. 2016), *reh'g en banc denied*, 2016 U.S. Appl. LEXIS 19520 (10th Cir. Oct. 28, 2016), the Governor of Utah issued an executive action terminating Planned Parenthood's at-will contract to provide reproductive health services. Planned Parenthood sued for First Amendment retaliation, alleging that the governor terminated the contract in retaliation for "associating with other Planned Parenthood providers who participate in lawful programs that allow abortion patients to donate fetal tissue for scientific research," advocating for legal abortions, and "associating with organizations for political, social and education reasons." *Id*. at 1257-62. The Tenth Circuit reversed the district court's denial of a preliminary injunction, specifically concluding that the plaintiff had established a likelihood of prevailing on its unconstitutional conditions claim. *Id*. at 1263.

Addressing other arguments raised in Defendants' motion, the non-renewal of DePaul Industries' contract, after 12 consecutive years of renewal, meets the necessary threshold for adverse action. *See Ariz. Students' Ass'n v. Ariz. Bd. Of Regents*, 824 F.3d 858, 870 (9th Cir. 2016). The "adverse action" element of a First Amendment retaliation claim is a low threshold. *Rutan v. Republican Party of Illinois*, 497 U.S. 65, 75 n.8 (1990) (holding that "even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to

punish her for exercising her free speech rights" comprises adverse action). Non-renewal of a contract in retaliation for First amendment conduct may comprise adverse action. *Sindermann*, 408 U.S. at 597-98 ("Nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights."). Additionally, the allegations plausibly show that continuing to associate with Mr. Cosby was a substantial or motivating factor for the City's non-renewal.

V. **Breach of the duty of good faith and fair dealing and Fraud (Sixth and Seventh Claims for Relief)**

The Amended Complaint allege facts sufficient to constitute a claim of breach of the duty of good faith and fair dealing, and a claim for fraud upon which relief can be granted. The Amend Complaint sufficiently alleges that prior to and continuing through the time the City published the RFP, the City's intention was to eliminate DePaul Industries as a security service provider. Am. Compl. ¶ 109. As part of its scheme, the City posted an RFP that concealed the true scope of work and required "armed" security officers for all locations to prohibit DePaul Industries from bidding. *Id*. ¶ 108.

VI. **Negligence claim (Eighth Claim for Relief)**

The Amended Complaint alleges the City negligently failed to train and supervise its employees on contracting procedures. Am. Compl. ¶¶ 116-119. DePaul Industries list four categories under which the City's unreasonable conduct created an unreasonable risk of harm, including: (a) failing to adopt and maintain training policies for City employees and agents involved in the QRF process; (b) failing to adopt and maintain training policies for City employees and agents involved in working with disable employees of QRF contractors to fulfill the inclusionary policies with respect to disabled individuals; (c) affirmatively adopting policies

and procedures that allowed City employees to circumvent public contracting laws; and (d) failing to adopt and maintain procedures to discover and correct improperly handled City procurements. Am. Compl. ¶ 116.

To allege a claim for negligence, a plaintiff must plead "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent." *Piazza ex rel. Piazza v. Kellim*, 271 Or. App. 490, 516 (Or. Ct. App. 2015), *reviewed allowed and affirmed sub nom.*

On its face, it cannot be said that DePaul Industries has stated a negligence claim which upon relief may be granted. The negligence claim is dismissed with leave to amend.

## CONCLUSION

Defendants' motion to dismiss (ECF No. 9) is DENIED in part. Plaintiff's negligence claim is dismissed with leave to amend within 30 days of entry of this Opinion and Order.
IT IS SO ORDERED.

DATED this 23rd day of August, 2018.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge