IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DEPAUL INDUSTRIES**,

    Plaintiff,

    v.

**CITY OF EUGENE**, et al,

    Defendants.

**Civ. No. 6:18-cv-00320-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff DePaul Industries alleges that the City of Eugene and a number of its employees violated Plaintiff's Constitutional and statutory rights by unlawfully annulling two security service contracts between Plaintiff and the City, among other things. Pl.'s Third Am. Compl. ("TAC") ¶ 1, ECF No. 94. Plaintiff alleges that Defendant Benjamin Miller, a lawyer in the City Attorney's Office, participated in this scheme with retaliatory intent. TAC ¶¶ 10, 19. Plaintiff seeks punitive damages against Mr. Miller in his personal capacity in its substantive due process, procedural due process, and fraud claims.[1] Def.'s Mot. 1 n.1, ECF No. 108; TAC ¶¶ 82–94, 115–24. Mr. Miller moves for summary judgment on these claims pursuant to Fed. R. Civ. P. 56(a). Def.'s Mot. 1. Mr. Miller argues that he is entitled to qualified immunity as to Plaintiff's due

---

[1] Plaintiff also sought punitive damages against Mr. Miller in his personal capacity in its First Amendment retaliation claim. TAC ¶¶ 95–104. The parties have stipulated to dismissing this claim against Mr. Miller in his personal capacity. Pl.'s Resp. 1, ECF No. 115.

1 – OPINION AND ORDER

process claims, did not violate Plaintiff's due process rights, and did not commit fraud. Def.'s Mot. 15–26, 33–34.

Because a reasonable jury could find in favor of Plaintiff on these claims, this Court DENIES Defendant's Motion for Partial Summary Judgment (ECF No. 108).

**BACKGROUND[2]**

This case involves two twelve-month contracts between Plaintiff, a Qualified Non-Profit Agency for individuals with disabilities ("QRF"), and the City. Both contracts involved Plaintiff providing security services to the city; one at a eleven city-owned parking garages and one at the library and the Hult Center for the Performing Arts. TAC ¶¶ 1, 25, 27, 28; *see* ORS § 279.835(6). The City renewed these contracts with Plaintiff over a period of approximately 13 years, consecutively. TAC ¶ 4.

On May 27, 2016, the City published a Request for Proposal ("RFP") seeking bids for an armed security services provider. TAC ¶ 42. The RFP covered the library, the Hult Center, their respective parking facilities, and other facilities that may be "covered by a resulting contract." TAC ¶ 42; Def.'s Mot. 12. Plaintiff did not submit a proposal because it did not provide armed security services. TAC ¶ 42. The City ultimately awarded the RFP to Advanced Security, Inc. on June 23, 2016. TAC ¶ 9; Def.'s Mot. 7. Advanced Security is not a QRF provider. TAC ¶ 42. The contract with Advanced Security initially encompassed only the library, the Hult Center, and their parking facilities. Def.'s Mot. 12; TAC ¶ 10. Later, the City amended the contract with Advanced Security to include the other sites covered in Plaintiff's parking garage contract. *Id.* Plaintiff's QRF contracts with the city expired in the summer of 2016. Def.'s Mot. 8, 11.

---

[2] I view the facts in the light most favorable to Plaintiff, the non-moving party. *See Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Underlying Plaintiff's claims of retaliation and animus is an unrelated First Amendment retaliation lawsuit involving Plaintiff's employee, Mark Cosby, who was a vocal critic of the City. *See* TAC ¶¶ 31–37. Plaintiff claims that the City retaliated against Plaintiff because Plaintiff did not fire Mr. Cosby and rejected the City's tender of Mr. Cosby's lawsuit against the City. TAC ¶ 85.

This action was transferred to this Court on February 20, 2018. ECF No. 6. Plaintiff filed a Third Amended Complaint on August 13, 2019. ECF No. 94. Mr. Miller now moves for summary judgment in his personal capacity. ECF No. 108.

## **STANDARDS OF REVIEW**

A court must grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I. Qualified Immunity**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law." U.S. CONST. art. XIV, § 1. This clause covers a substantive sphere and a procedural sphere. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (citations omitted); *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To receive due process protection, a claimant must first demonstrate that he or she has a "life, liberty or property" interest that is subject to deprivation.

Plaintiff alleges that Defendants violated its substantive and procedural due process rights. TAC ¶¶ 82–90. To prevail on a substantive due process claim, Plaintiff must demonstrate that the government action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Hoeck v. City of Portland*, 57 F.3d 781, 786 (9th Cir. 1995) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). An official may be liable for another actor's constitutional violation if "he induces that actor to violate a third party's constitutional rights, provided that the official possesses the requisite intent, such as retaliatory animus." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012). The retaliatory animus must be the but-for cause of the injury. *Id.* (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Here, Plaintiff alleges that it had a property interest in its contracts with the City because it was the only QRF in Lane County that provided unarmed security services. TAC ¶ 83. Plaintiff alleges that Defendants deprived Plaintiff of its property interest by publishing a deceptive RFP, stating a need for armed security as a pretext, and falsely

labeling some of its contracts as "personal service contracts" to avoid contracting with Plaintiff. TAC ¶ 84.

To prevail on a procedural due process claim, Plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). Here, Plaintiff alleges that Defendants failed to give Plaintiff notice of any performance issues concerning the library contract or the City's intent to terminate the contract and use a different security service provider. *Id.* Plaintiff alleges that the City used the armed security requirement to disqualify Plaintiff from participating in the procurement process. *Id.* Plaintiff alleges that the City failed to give Plaintiff meaningful notice or an opportunity to be heard regarding the RFP, the City's intent to award a parking garage contract to another provider, the addition of the remaining parking garages to the Advanced Security, Inc. contract, and the end of Plaintiff's parking garage contract. *Id.* Plaintiff further alleges that the City disqualified Plaintiff from participating in the procurement process for security services since 2003 without notice or opportunity to be heard. *Id.*

Mr. Miller argues that he is entitled to qualified immunity from Plaintiff's due process claims because Plaintiff's "due process rights were not clearly established" at the time of his conduct and, even if they were, he did not cause a violation of those rights. Def.'s Mot. 15–16. Qualified immunity depends on whether an official violated a clearly established constitutional right. *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018) (quotations and citations

omitted). A constitutional right is clearly established when its contours are "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 1163. A case "directly on point" is not necessary for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotations and citations omitted). "To evaluate whether a particular question is beyond debate, a court looks for cases of controlling authority in [the plaintiff's] jurisdiction at the time or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Id.* (quotations and citations omitted).

## A. Clearly Established Property Interest

ORS § 279.850(1)(a) provides that, subject to certain exceptions, all public agencies shall purchase goods and services from QRFs when the product or service is listed on a QRF Procurement List and meets the agency's procurement requirements. Public agencies must purchase QRF goods and services in accordance with the Department of Administrative Services' ("DAS") rules. ORS § 279.850(1)(a). For example, OAR 125-055-0010(1)(a) prohibits agencies from developing specifications inhibiting or discouraging public contracts with QRF providers for their products or services. OAR 125-055-0010(3) mandates that agencies remember the purpose of the law: encouraging and assisting individuals with disabilities "to achieve maximum personal independence in their communities through productive, gainful employment." ORS § 279.850(3) requires agencies and QRFs to cooperate closely. "Procedural guarantees ordinarily do not transform a unilateral expectation into a constitutionally protected property interest" unless they are "intended to operate as a significant substantive restriction" on

decision making. *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980). These rules place "significant substantive restrictions" on the City's decision-making.

Additionally, the City renewed its contracts with Plaintiff each year for twelve and thirteen years. TAC ¶ 4. In ruling on Defendants' Motion to Dismiss, this Court held that:

> [T]he Amended Complaint does assert a protected property interest on a theory that the QRF statute obligates the City to contract with a QRF qualified to perform the required services. The "de facto" condition of having the Library contract renewed annually also creates a protected property interest. The ongoing, decade-long contractual relationship between the parties establishes the understanding and expectation of DePaul Industries' property interest. At this stage, DePaul Industries has sufficiently alleged a protected property interest in its Library contract.

Op. and Order 11 (citations omitted), ECF No. 28. Likewise, Plaintiff has demonstrated a protected property interest in its contracts with the City at this stage, and that right was clearly established in 2016. *See David Hill Dev., Ltd. Liab. Co. v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1217–19 (D. Or. 2010) (finding that a real estate developer sufficiently alleged a property interest where Oregon law provided that a plat was binding and the city had a pattern of interference with the plaintiff's ability to develop the property due to city preference for other developers); *see also Grabhorn, Inc. v. Metro. Serv. Dist.*, 624 F. Supp. 2d 1280, 1288 (D. Or. 2009) (holding that a metropolitan code controlling variance application was "sufficiently mandatory" to create a constitutionally protected property interest).

Mr. Miller argues that the statutory language is not mandatory and that the library's security needs, Plaintiff's interpretation of its indemnification duties under the parking garage contract, and Plaintiff's bankruptcy raised questions as to whether Plaintiff could provide needed services when required. Def.'s Mot. 17. Mr. Miller may well be able to convince a jury that these circumstances were the permissible and actual reasons for his conduct. Regardless, these are

factual questions for a jury to determine. Whether Mr. Miller purposefully tried to defeat Plaintiff's protected property interest with retaliatory animus is also a factual question.

**B. Due Process Violations**

Plaintiff raises genuine issues of material fact regarding whether: (1) Mr. Miller engaged in clearly arbitrary and unreasonable government conduct; and (2) the City denied Plaintiff notice and opportunity to contest the RFP and contract award process. Viewing the facts in the light most favorable to Plaintiff, those facts are as follows. On May 31, 2016, Plaintiff denied tender of Mr. Cosby's lawsuit against the City. TAC ¶ 85; Schneider Decl. Ex. 1, at 2, ECF No. 116. Mr. Miller told then-city attorney Glenn Klein:

> We have a current cont[r]act with [DePaul Industries] that is being renegotiated. I don't know why it is being renewed if this is their position.

Schneider Decl. Ex. 1, at 1. Mr. Miller also said:

> I think stopping contract negotiations and getting the principals together may go further for getting DePaul to cooperate, which we need.

*Id.* On June 14, 2016, Becky Wheeler told Clayton Stilwell, a City purchasing analyst:

> [The Planning and Development Department] wants/needs to extend their security contract with de Paul [sic]. Last I heard, [the City Attorney's Office] said we cannot contract with de Paul [sic]. Has that changed? If not, do you know if I should refer [the Planning and Development Department] (Travis) to Glenn [Klein]?

Schneider Decl. Ex. 2; *see* Def.'s Mot. 7. On June 16, assistance city attorney Hwa Go asked Mr. Klein:

> [D]o we have a hold on contracting or amending contracts with DePaul Industries? I received a call from Travis Hargitt in Parking Services on Tuesday saying he would like to amend the DePaul Security Contract by extending the contract term until Dec[ember] 31, 2017 (it current[ly] ends 6/30/2016) and making some changes to the scope of services. He said he was told by Becky Wheeler in Purchasing that someone in the [City Attorney's Office] said we have a hold on contracting with DePaul and he needs the go ahead from us before doing anything further . . . [Becky] told me yesterday that she was

> told that you instructed Sue and/or Kristie and/or Vicki, that we're holding off on contracting with DePaul because of some issue, but she didn't have any further info.

Schneider Decl. Ex. 3, at 1–2. Mr. Klein responded:

> Correct. Their lawyer is refusing to honor defense and indemnity at the moment. Ben [Miller] can give you background. I also was told there was an RFP out so not sure why we would be [e]xtending more than 1 month.

*Id.* at 1. On June 17, Ms. Go replied:

> I talked with Ben [Miller], too, and received the background. As for why Parking/Travis Hargitt was contemplating a long extension – my understanding is that Travis wasn't aware of the refusal of tender problem and that we want to avoid entering into new contracts or long extensions with DePaul at this point in time.

*Id.* Ms. Go asked Mr. Miller whether he approved a one-month extension and he said yes. *Id.* On June 22, Ms. Go relayed Tim Westerman's concern that a thirty-day extension would not be enough and asked Mr. Miller and Mr. Klein if a sixty-day extension would be okay. Schneider Decl. Ex. 5, at 1. Mr. Miller agreed to meet with her to discuss it the next day. *Id.*

> On June 21, Mr. Stillwell told Mr. Hargitt:
>
> [I]t will be very important that you have all the performance-issue related [sic] documentation as you move away from the DePaul contract. Keep it handy and keep adding to it as the need arises.

Schneider Decl. Ex. 4, at 1. Mr. Hargitt responded:

> Guess I better start documenting big time. I was told that this was/would be directed towards me and not a choice on my part?

*Id.* Mr. Stilwell replied:

> I think that was before Hwa [Go] read the law requiring us to contract with the QRF's [sic] when they meet our specs. We have to demonstrate that they cannot meet our needs, or have routinely failed to do so over the course of time. You might follow-up with Hwa.

*Id.* On June 28, Mr. Westerman told Plaintiff:

9 – OPINION AND ORDER

> [T]he reason for the shorter extension is the City will be ending the contract effective August 31st. The City is working to consolidate all of its security services under one contract."

Schneider Decl. Ex. 6, at 1. Mr. Westerman forwarded the exchange to Ms. Go. *Id.*

A reasonable jury could infer from this evidence that the City decided it no longer wanted to contract with Plaintiff then crafted a pretext, and Mr. Miller engaged in clearly arbitrary and unreasonable government conduct to that end.

Turning to notice and opportunity to be heard, the City never notified Plaintiff that it would not renew the contracts due to Plaintiff's denial of tender or that it had concerns about its bankruptcy status. Moreover, the RFP explicitly covered the library and Hult Center parking facilities but not the other parking sites. *See* TAC ¶ 42; Def.'s Mot. 12. Instead, it vaguely referenced other facilities that may be "covered by a resulting contract." *See* Def.'s Mot. 12. The City then grafted the remaining parking sites that Plaintiff serviced into the Advanced Security, Inc. contract without a bidding process. Def.'s Mot. 12; TAC ¶ 10. A reasonable jury could find that Mr. Miller participated in the City's deprivation of Plaintiff's right to notice and opportunity to contest the RFP process.

Because there is evidence in the record from which a reasonable jury could infer that Mr. Miller violated clearly established law, Mr. Miller is not entitled to qualified immunity.

## II. Due Process

Mr. Miller also moves for summary judgment on Plaintiff's due process claims generally. Def.'s Mot. 24–26. For the reasons explained above, summary judgment is not warranted on Plaintiff's substantive or procedural due process claims.

Mr. Miller's Motion for Summary Judgment on the procedural and substantive due process claims is DENIED.

### III. Fraud

Mr. Miller moves for summary judgment on Plaintiff's fraud claim. Def.'s Mot. 33–34. To prevail on a fraud claim, a plaintiff must prove that "the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.,* 350 Or. 336, 351–52 (2011).

Here, there is evidence in the record from which a reasonable juror could infer that Mr. Miller helped the City deprive Plaintiff of contracts it had a constitutionally protected interest in then crafted a pretextual reason for terminating the contractual relationship. Plaintiff alleges that before and after the RFP's publication, the City intended to displace Plaintiff by awarding a contract to another security service provider then expanding the scope of the contract. TAC ¶ 117. Mr. Miller did not draft or publish the RFP, but, as explained above, he advised various City employees on eliminating Plaintiff as a security service provider. *See* Schneider Decl. Ex. 1, at 1; Schneider Decl. Ex. 2; Schneider Decl. Ex. 3, at 1; Schneider Decl. Ex. 6, at 1.

Because Plaintiff raises a genuine dispute of material fact regarding whether Mr. Miller participated in fraud, Mr. Miller's Motion for Summary Judgment on Plaintiff's fraud claim is DENIED.

## **CONCLUSION**

Defendant Benjamin Miller's Motion for Summary Judgment (ECF No. 108) is DENIED.

IT IS SO ORDERED.

DATED this 29th day of May, 2020.

                               \_\_s/Michael J. McShane_____
                                     **Michael J. McShane**
                                 **United States District Judge**