IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DEPAUL INDUSTRIES**,

               Plaintiff,

      v.

**CITY OF EUGENE**, et al,

               Defendants.

_____

**Civ. No. 6:18-cv-00320-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff DePaul Industries alleges that the City of Eugene and a number of its employees violated Plaintiff's Constitutional and statutory rights by unlawfully annulling two security service contracts between Plaintiff and the City. Pl.'s Third Am. Compl. ("TAC") ¶¶ 1, 11, ECF No. 94. Defendants move for partial summary judgment on Plaintiff's statutory claims (ORS § 279.850, ORS Chs. 279A and B), Substantive and Procedural Due Process claims, breach of implied covenant of good faith and fair dealing claim, and negligence claim. Defs.' Mot. 1, ECF No. 131. For their part, Plaintiff moves for partial summary judgment against Defendants' counterclaims for breach of contract, declaratory judgment, and attorney fees. Pl.'s Mot. 2, ECF No. 132.

      For the reasons explained below, Defendants' Motion for Partial Summary Judgment (ECF No. 131) is DENIED and Plaintiff's Motion for Partial Summary Judgment (ECF No. 132) is GRANTED in part and DENIED in part.

1 – OPINION AND ORDER

## BACKGROUND[1]

Plaintiff is a non-profit organization that administers a variety of programs to assist Oregonians with disabilities in receiving vocational training and finding work. As such, they meet the statutory definition of a Qualified Rehabilitation Facility ("QRF"). *See* ORS § 279.835(6). Under Oregon law, public agencies (such as Defendant City of Eugene) must contract with a QRF if the QRF is able to supply a service that meets the agencies' requirements. *See* ORS §§ 279.835–279.855. Plaintiff is the only QRF providing security services in Lane County. TAC ¶ 3.

The dispute here involves two unarmed security service contracts between Plaintiff and the City. Each contract was for a duration of twelve months. Pursuant to these contracts, Plaintiff provided security services at: (1) eleven City-owned parking garages; and (2) the City's downtown public library and the Hult Center for the Performing Arts. TAC ¶¶ 1, 25, 27, 28; *see* ORS § 279.835(6). The City renewed these contracts with Plaintiff each year for approximately thirteen consecutive years. TAC ¶ 4.

In a change of course, the City decided that security personnel at some of the facilities covered in its contract with Plaintiff should carry guns. The City sought bids for an armed security services provider by publishing a Request for Proposal ("RFP") on May 27, 2016. TAC ¶ 42. The RFP covered the library, the Hult Center, their respective parking facilities, and *other unnamed facilities that may be "covered by a resulting contract."* TAC ¶ 42 (emphasis added). Because Plaintiff did not provide armed security services as part of its vocational program, they

---

[1] When reviewing each Motion, I view the facts in the light most favorable to the non-moving party. *See Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

did not submit a proposal. TAC ¶ 42. The City ultimately awarded the RFP to a non-QRF

provider, Advanced Security, Inc., on June 23, 2016. TAC ¶¶ 9, 42. The Advanced Security, Inc.

contract initially encompassed only the library, the Hult Center, and their parking facilities. TAC

¶ 10. The City later amended the contract to include the other sites covered in Plaintiff's parking

garage contract. *Id.* Plaintiff's QRF contracts with the city expired in the summer of 2016. TAC

¶ 11.

At the heart of their case, Plaintiff alleges that the switch to armed security was a ruse by

the City to avoid awarding the QRF contract to Plaintiff. They allege that the language of the

RFP was purposely or negligently drafted to avoid putting Plaintiff on notice that all of its QRF

contracts with the City were at risk. Underlying these claims is an unrelated First Amendment

retaliation lawsuit involving Plaintiff's employee, Mark Cosby, who was a vocal critic of the

City. *See* TAC ¶¶ 31–37. Plaintiff claims that the City retaliated against Plaintiff because

Plaintiff did not fire Mr. Cosby and rejected the City's tender of the lawsuit. TAC ¶ 85.

## STANDARDS OF REVIEW

A court must grant summary judgment if the moving party shows that "there is no

genuine dispute as to any material fact" and is "entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). An issue is "genuine" if a reasonable jury could find in favor of the non-moving

party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome

of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to

the nonmoving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006)

(quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its

burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Defendants' Motion

### A. ORS § 279.850, ORS Chs. 279A and B, and Negligence (First, Second, and Eighth Claims for Relief)

Plaintiff alleges that Defendants violated Oregon public contracting laws and, alternatively, were negligent. TAC ¶¶ 59–81, 125–29.

Defendants first argue that this Court lacks jurisdiction over these claims. Defs.' Mot. 13–23. This Court previously addressed jurisdictional issues (administrative exhaustion, judicial review, equitable estoppel, and futility) in ruling on Defendants' Motion to Dismiss and incorporates that discussion here. *See* Op. and Order 7–9, ECF No. 28. Defendants' related arguments, including timeliness, fail.

Defendants next argue that this Court is the wrong forum because the plain text of the relevant statutes grant jurisdiction solely to Oregon circuit courts. Defs.' Mot. 18. The language of the relevant provisions, however, is permissive and not mandatory language. *See* ORS §§ 279B.405(7)–(8), 279B.415(2)–(3), 279B.420(4)–(5). Additionally, "the states have no power directly to enlarge or contract federal jurisdiction." *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981). Defendants' Motion as to claims one and two is denied.

Defendants next argue that if the City has not violated the Public Contracting Code or Plaintiff has not availed itself of statutory remedies, the City has not violated any duty. Defs.'

Mot. 23. Because Defendants' failure to exhaust arguments fail and there exists a genuine

dispute of material fact as to whether the City violated the QRF statute, Defendants' Motion as to

claim eight is denied.

## B. Due Process (Third and Fourth Claims for Relief)

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . .

deprive any person of life, liberty or property, without due process of law." U.S. CONST. art.

XIV, § 1. This clause covers a substantive sphere and a procedural sphere. *See Cty. of*

*Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (citations omitted); *Mathews v. Eldridge,* 424

U.S. 319, 332 (1976). Plaintiff alleges that Defendants violated its substantive and procedural

due process rights. TAC ¶¶ 82–94.

To receive due process protection, Plaintiff must first allege that it has a "life, liberty or

property" interest that is subject to deprivation. This Court has twice found that Plaintiff has a

constitutionally protected property interest. *See* Op. and Order 10–11, ECF No. 28; Op. and

Order 6–8, ECF No. 128. The Court declines to revisit the issue here.

To prevail on a substantive due process claim, a plaintiff must demonstrate that the

government action was "clearly arbitrary and unreasonable, having no substantial relation to the

public health, safety, morals, or general welfare." *Hoeck v. City of Portland*, 57 F.3d 781, 786

(9th Cir. 1995) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). An

official may be liable for another actor's constitutional violation if "he induces that actor to

violate a third party's constitutional rights, provided that the official possesses the requisite

intent, such as retaliatory animus." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012).

The retaliatory animus must be the but-for cause of the injury. *Id.* (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

Here, Plaintiff alleges that Defendants published a deceptive RFP, stated a need for armed security as a pretext, and falsely labeled some of its contracts as "personal service contracts" to avoid contracting with Plaintiff. TAC ¶ 84. This Court previously found that "[i]mproper, retaliatory motivation cannot serve as a rational basis for the denial of a claimed property right." Op. and Order 12, ECF No. 28. This Court also found that a reasonable jury could infer from the evidence that "the City decided it no longer wanted to contract with Plaintiff then crafted a pretext." Op. and Order 10, ECF No. 128.

Defendants now argue that the City believed that it could advance public health, safety, and fiscal obligations by providing library security guards with guns, thus avoiding contracts with an entity that could not meet its contractual obligations. Defs.' Mot. 30. Plaintiff has raised genuine issues of material fact regarding whether City officials engaged in clearly arbitrary and unreasonable conduct and denied Plaintiff notice and opportunity to contest the RFP and contract award process. *See* Op. and Order 8–10, ECF. 128. Plaintiff also proffers evidence from which a reasonable juror could conclude that the City's library safety committee was a facade. *See* Pl.'s Resp. 26–27, ECF No. 138. Library Customer Experience Manager Lavena Rae Nohrenberg formed the committee. Eyman Decl. Ex. 7, at 1, 13–14, ECF No. 139. Before the committee convened, Ms. Nohrenberg discussed security bids with Becky Wheeler from finance *Id.* at 15–16. Ms. Nohrenberg's meeting notes said that she was supposed to document dissatisfaction with Plaintiff. *Id.* at 17–18. The City has not, in fact, used armed guards at the library and Ms. Nohrenberg testified that she did not know when it would. *Id.* at 10, 24, 21–23.

The City maintains that the only relevant question is whether the City could have had a legitimate reason for its decision. Defs.' Reply 28, ECF No. 141. Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that the City's proffered reasons for contracting with another provider were not legitimate because they were entirely pretextual. A reasonable jury could also find that the City deprived Plaintiff of notice and opportunity to contest the RFP process. The Court has previously stated to the parties that the issues of pretext and animus are fact-based and that neither side will be capable of scoring a knockout punch at the Summary Judgment stage. Defendants' Motion as to Plaintiff's substantive due process claim is denied.

To prevail on a procedural due process claim, Plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted). Here, Defendants argue that Plaintiff had an adequate state law remedy that it failed to exhaust, therefore Plaintiff cannot establish that the City "deprived it of a protected property interest without 'constitutionally adequate procedure.'" Defs.' Mot. 32 (citing *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008)). As explained above, Defendants' failure to exhaust administrative remedies arguments fail. Therefore, Defendants' Motion as to Plaintiff's procedural due process claim is denied.

## C. Implied Covenant of Good Faith and Fair Dealing (Sixth Claim for Relief)

Finally, Defendants argue that the contracts expressly granted the City full latitude to decide whether to extend its contracts with Plaintiff, therefore the implied covenant of good faith and fair dealing does not apply. Defs.' Mot. 35. Under Oregon law, every contract contains an implied duty of good faith and fair dealing. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (1995) (citations omitted). The purpose of this duty is to "ensure that parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off–Project Water Uses, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (citations and internal quotation marks omitted). The good faith doctrine is therefore designed to "effectuate the reasonable contractual expectations of the parties." *Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557, 563 (1987). It does not, however, "vary the substantive terms of the bargain . . . [or] provide a remedy for an unpleasantly motivated act that is expressly permitted by contract." *U.S. Nat'l Bank of Or. v. Boge*, 311 Or. 550, 567 (1991). As a result, a duty of good faith and fair dealing "may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue." *Or. Univ. Sys. v. Or. Pub. Emps. Union, Local 503*, 185 Or. App. 506, 511 (2002).

In the context of agreements granting unilateral discretion to one party, a duty of good faith is always implied absent language expressly allowing consent to be withheld "unreasonably." *Wells Fargo Bank, N.A. v. The Ash Org.*, No. 09–CV–188–MO, 2010 WL 2681675, at *7–8 (D. Or. July 2, 2010); *see also Tolbert v. First Nat'l Bank of Or.*, 312 Or. 485, 492 (1991). Without such language, which itself makes clear the objectively reasonable expectations of the parties, a party acts in bad faith by exercising its discretion "for purposes not

contemplated by the [original] parties." *Best*, 303 Or. at 563. To determine the purposes contemplated by the original parties, a trier of fact may consider both the terms of the contract and extrinsic evidence. *Gregory Funding, LLC v. Saksoft, Inc.*, No. 3:16–cv–480–SI, 2016 WL 4480693, at *3 (D. Or. Aug. 24, 2016). While an implied duty of good faith will often exist by operation of law, its precise contours are always case specific and dependent upon specific evidence. *See Arnett v. Bank of America, N.A.*, 874 F. Supp. 2d 1021, 1033–35 (D. Or. 2012).

Here, the contracts impose a duty of good faith and fair dealing. The parking garage contract contained an expiration date and stated that "[t]he option to extend [the contract] [would] follow a review of the performance of the Contractor and [was] at the sole discretion of the City." TAC Ex. 1, at 2. The contracts did not state that the City could decline to extend the contract unreasonably. Plaintiff had a reasonable expectation that the City would exercise its discretion in good faith. Additionally, Defendants have failed to provide evidence that the City satisfied its performance review obligation.

Plaintiff has proffered evidence from which a reasonably jury could conclude that Defendants acted in bad faith. As explained above, Plaintiff has raised genuine issues of material fact regarding the library's security needs and Defendants' alleged need for armed guards. Further, various City officials discussed discontinuing contracts with Plaintiff after Plaintiff denied tender of their employee's lawsuit against the City.  *See* Op. and Order 8–10, ECF No. 128. This Court previously held that "[a] reasonable jury could infer . . . that the City decided it no longer wanted to contract with Plaintiff then crafted a pretext." *Id.* at 10. Defendants' attempt to relitigate this issue is unpersuasive.

For the above reasons, Defendants' Motion for Partial Summary Judgment is denied.

9 – OPINION AND ORDER

## II. Plaintiff's Motion

As a preliminary matter, Plaintiff requests, without objection, that this Court take judicial notice of four items:

• Exhibit 1: Complaint filed February 8, 2017, in *In re DePaul Industries*, Case No. 16-32293-pcm11 (the "DePaul Bankruptcy"), commencing Adversary Proceeding No. 17-03021-pcm entitled *DePaul Industries v. City of Eugene* [ECF No. 1] (the "Adversary Proceeding") and now pending in this Court as Case No. 6:18-cv-320-MC.

• Exhibit 2: Defendants' Answer, Affirmative Defenses, and Counterclaim filed March 10, 2017, in the Adversary Proceeding [ECF No. 8].

• Exhibit 3: Debtors' Third Amended Joint Plan of Reorganization Dated March 7, 2017 (as Modified April 26, 2017), filed in the DePaul Bankruptcy [ECF No. 301] (the "Plan").

• Exhibit 4: Order Confirming Debtors' Third Amended Joint Plan of Reorganization Dated March 7, 2017 (as Modified April 26, 2017), filed in the DePaul Bankruptcy on May 1, 2017 [ECF No. 302] (the "Confirmation Order").

Pl's. Req. for Judicial Notice 2, ECF No. 143. This Court takes judicial notice of items one through four under Federal Rule of Evidence 201 as they are matters of public record and not reasonably subject to debate. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001); *Santa Monica Food not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006). The Court addresses the merits of Plaintiff's Motion for Partial Summary Judgment below.

## A. Breach of Contract (First Counterclaim)

Defendants allege that Plaintiff breached the parking garage contract by denying tender of their employee's lawsuit against the City. Defs.' Answer ¶¶ 150–61, ECF No. 95. Plaintiff argues that the Court should dismiss Defendants' breach of contract counterclaim because the

bankruptcy court discharged Plaintiff's pre-confirmation creditor claims. Pl.'s Mot. 6. A creditor who has a claim against a debtor who has filed for Chapter 11 bankruptcy that is unscheduled or is scheduled as disputed, contingent, or unliquidated must timely file a proof of claim. Fed. R. Bankr. Proc. 3003(c)(2). The confirmation of a bankruptcy plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Such a discharge enjoins the holder of the claim for further attempt to bring the claim as the debtor's personal obligation. 11 U.S.C. § 524(a). "[A] claim arises under the bankruptcy code once it is within the claimant's "fair contemplation." *In re Zilog, Inc.*, 450 F.3d 996, 999–1000 (9th Cir. 2006) (citation and internal quotations omitted).

The issues in this case arose before Plaintiff filed for bankruptcy on June 10, 2016. The City filed a proof of claim on October 11, 2016 and did not include a breach of contract or indemnity claim. *See* Req. for Judicial Notice Ex. 3. The bankruptcy court discharged Plaintiff's creditors' claims then confirmed Plaintiff's Chapter 11 plan on May 1, 2017. *See* Req. for Judicial Notice Ex. 4. The plan did not provide an exception for Defendants' claims. *See id.*

Defendants argue that its breach of contract counterclaim only seeks a setoff and recoupment against any damages a jury may award Plaintiff and would not provide independent relief. Defs.' Resp. 5, ECF No. 137. "Under setoff, mutual debts cancel each other. These debts may arise either from separate transactions or a single transaction but must be incurred prior to the filing of a bankruptcy petition." *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000). Generally, the bankruptcy code does not affect a creditor's right to offset a mutual debt between a creditor and debtor that arose before the commencement of a bankruptcy case. *See* 11 U.S.C. § 553(a). Recoupment "is an equitable doctrine that exempts a debt from the automatic stay when

11 – OPINION AND ORDER

the debt is inextricably tied up in the post-petition claim. Unlike setoff, recoupment is not limited

to pre-petition claims and thus may be employed to recover across the petition date." *In re TLC*

*Hosps., Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000) (citations and internal quotations omitted).

Here, Defendants assert setoff and recoupment as affirmative defenses and breach of

contract as a counterclaim. Defs.' Answer ¶¶ 145–46, 150–61. In *Rogue River Mgmt. Co. v.*

*Shaw*, the Oregon Supreme Court distinguished setoff and recoupment from counterclaims:

> Counterclaim differs in scope from set-off and recoupment. Only counterclaim permits
> affirmative relief. A cognizable counterclaim must plead facts giving the defendant an
> independent cause of action against plaintiff. Recoupment and set-off may be available as
> defenses for the purpose of liquidating the whole or part of plaintiff's claim in situations
> where an independent action would not lie.

243 Or. 54, 59–62 (1966) (citation and internal quotations omitted). Defendants properly state

grounds for setoff and recoupment in their breach of contract counterclaim. To the extent that

Defendants seek affirmative, independent relief for breach of contract, Defendants' breach of

contract counterclaim is dismissed. *See* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates

a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires,

treat the pleading as though it were correctly designated, and may impose terms for doing so.").

"[A] party may amend its pleading only with the opposing party's written consent or the court's

leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Defendants are granted 14 days to file an amended answer re-alleging their breach of contract

counterclaim as setoff and recoupment.

Plaintiff's Motion as to Defendants' counterclaim for breach of contract is granted in part

and denied in part.

**B. Declaratory Judgment (Second Counterclaim)**

Defendants seek a declaratory judgment stating that Plaintiff breached the parking garage and library contracts and the City was not required to continue contracting with Plaintiff. Defs.' Answer ¶ 176. Defendants also request that Plaintiff not "be allowed to interfere or disrupt the City's contracts with [Advanced Security, Inc.]." *Id.* Plaintiff argues that Defendants fail to allege facts regarding Plaintiff's alleged breach of the library contract or interference with or disruption of the City's contracts with Advanced Security, Inc. Pl.'s Mot. 9. Because there are genuine issues of material fact in this case, the Court declines to address declaratory relief at this stage. It will better be addressed at a motion for directed verdict at the close of Plaintiff's case. Plaintiff's Motion as to Defendants' counterclaim for declaratory judgment is denied.

**C. Attorney Fees (Third Counterclaim)**

Defendants seek attorney fees pursuant to Sections 22 of the parking garage and library contracts. Defs.' Answer ¶ 178. While Plaintiff has raised several cogent arguments as to why Defendants are not entitled to attorney fees, the Court will address this issue post-judgment in the event that Defendants prevail at trial.

Plaintiff's Motion as to Defendants' counterclaim for attorney fees is denied.

## CONCLUSION

Defendants' Motion for Partial Summary Judgment (ECF No. 131) is DENIED and Plaintiff's Motion for Partial Summary Judgment (ECF No. 132) is GRANTED in part and DENIED in part. Defendants' breach of contract counterclaim is DISMISSED in part. Defendants are granted 14 days to file an amended answer re-alleging their breach of contract counterclaim as setoff and recoupment in accordance with this Opinion.

IT IS SO ORDERED.

DATED this 27th day of August, 2020.

_s/Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

14 – OPINION AND ORDER